UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE REIS VIEIRA, | No. 2:18-cv-0955 DB |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the ALJ's treatment of the medical opinion evidence, lay testimony, and Vocational Expert testimony constituted error.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. <u>See</u> https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. <u>See</u> 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (<u>See</u> ECF Nos. 8 & 9.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

**PROCEDURAL BACKGROUND**

On December 10, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 14, 2008. (Transcript ("Tr.") at 428-43.) Plaintiff's alleged impairments included bipolar disorder, ADHD, right torn rotator cuff, and right arm numbness. (Id. at 475.) Plaintiff's applications were denied initially, (id. at 279-83), upon reconsideration, (id. at 285-90), and later by an Administrative Law Judge. (Id. at 245-64.)

However, on February 28, 2014, the Appeal Council vacated the ALJ's decision and remanded the matter to the ALJ for further proceedings. (Id. at 271-74.) After further proceedings the ALJ issued another decision on February 18, 2015, again finding that plaintiff was not disabled. (Id. at 39.) On May 29, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's February 18, 2015 decision. (Id. at 5-7.)

Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing a complaint in this court on August 7, 2015. (Id. at 1658.) On March 8, 2017, the court reversed the decision of the Commissioner and again remanded the matter for further proceedings. (Id. at 1670.) Yet another hearing was held before an ALJ on October 16, 2017. (Id. at 1508-36.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 1508-13.)

In a decision issued on February 2, 2018, the ALJ again found that plaintiff was not disabled. (Id. at 1477.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since January 14, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: major depression, alcohol abuse disorder in remission, cannabis abuse

disorder, bipolar disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, cervical spine stenosis status post surgery with residual degenerative disk disease at the C3 and C4 levels, status post bilateral posterior cervical foraminotomies at the C5-6 level, right shoulder arthritis, and bilateral carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).[]

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk, with normal breaks, for 6 hours in an 8-hour workday. The claimant can sit, with normal breaks, for 6-hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently kneel, crouch, bend, and can frequently climb ramps and stairs. The claimant can occasionally crawl. The claimant can frequently perform fingering, fine and gross manipulation with the bilateral upper extremities. The claimant can perform simple, repetitive, routine-type tasks. The claimant can frequently interact with supervisors, co-workers, and the public. The claimant can maintain concentration, persistence, and pace for simple, repetitive, and routine tasks.

6. The claimant is unable to perform any past relevant work prior to May 10, 2016 (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1968, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform prior to May 10, 2016 (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

////

| | |
|---|---|
| 11. | As of May 10, 2016, the claimant had the additional severe impairment of lumbar spondylosis with possible radiculopathy and myalgia. (20 CFR 404.1520(c) and 416.920(c)).[] |
| 12. | As of May 10, 2016, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). |
| 13. | After careful consideration of the entire record, as of May 10, 2016, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift, carry, push and pull 10 pounds occasionally and 5 pounds frequently. The claimant can stand and/or walk, with (sic) for 6 hours in an 8-hour workday, with the ability to break every 2 hours to change position at his workstation in addition to his normal breaks. The claimant can sit for 6 hours in an 8-hour workday, with the ability to break every 2 hours to change position at his workstation in addition to his normal breaks. The claimant would not be off task. The claimant can never climb ladders, ropes, or scaffolds. The claimant can frequently kneel, crouch, bend, and can frequently climb ramps and stairs. The claimant can occasionally crawl. The claimant can frequently perform fingering, fine and gross manipulation with the bilateral upper extremities. The claimant can perform simple, repetitive, routine-type tasks. The claimant can frequently interact with supervisors, co-workers, and the public. The claimant can maintain concentration, persistence, and pace for simple, repetitive, and routine tasks. |
| 14. | As of May 10, 2016, the claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). |
| 15. | Considering the claimant's age, education, work experience, and residual functional capacity as of May 10, 2016, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 16. | The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

(Id. at 1447-76.)

After the Appeals Council failed to act on plaintiff's request for review within 60 days, the ALJ's decision became final, and plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 18, 2018. (ECF No. 1.)

////

////

4

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

////

5

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion argues that the ALJ committed the following three principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of subjective lay witness testimony constituted error; and (3) the ALJ's step-five finding was not supported by substantial evidence. (Pl.'s MSJ (ECF No. 19) at 23-32.[3])

### I. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief,

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A.  Barbara McGlynn (nèe Nolet), ARNP**

Plaintiff challenges the ALJ's treatment of the opinion offered by Nurse Practitioner Barbara McGlynn (nèe Nolet). (Pl.'s MSJ (ECF No. 19) at 24-25.) In remanding this matter previously, the court found that the ALJ failed to address Nurse Practitioner McGlynn's August 24, 2010 opinion. (Tr. at 1668.) On remand, the ALJ acknowledged McGlynn's opinion stating:

> The claimant's treating nurse practitioner, Barbara McGlynn, ARNP, opined consistently with treatment records that the claimant's condition would preclude work, noting her opinion was largely based on the claimant's continued alcohol use. She said he requires sustained abstinence from such use. Ms. McGlynn, however, is not an acceptable medical source under the Regulations. However, the Regulations require consideration of such opinions and provide detailed rules for such an evaluation. Areas we consider are: the examining and treatment relationship, length and frequency of the treatment relationship, the nature and extent of the treatment relationship, supportability, i.e. the degree to which the acceptable medical source presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings, the consistency of the opinion with the record as a whole, specialization of the treating source, and any other relevant factors (SSR 06-03p, 20 CFR 404.1527(d)).
>
> Ms. McGlynn has a long term and consistent treatment history with the claimant and indicated that the claimant's polysubstance use exacerbated his psychiatric symptoms, causing behavioral outbursts, fighting with family, significant others, and the police. However, the undersigned notes that disability opinions, such as those provided by Ms. McGlynn, are reserved for the Commissioner. These issues must be determined by the Administration Social Security Ruling 96-5p.

(Id. at 1467.)

The ALJ discussed Nurse Practitioner McGlynn's (nèe Nolet) opinion later in the decision, stating:

> The undersigned notes that, on an August 2010 Welfare-To-Work Exemption Request Form Barbara Nolet, PMHNP, opined that the claimant was severely disabled in his functional capacity to engage in training, education or work due to deficits in focus, concentration, an ability to complete tasks, impulsivity, irritability, anger outbursts, moodiness, and insomnia. The undersigned notes, however, that disability opinions, such as those provided by Ms. Nolet, are reserved

7

> for the Commissioner. These issues must be determined by the Administration. In addition, Ms. Nolet's conclusions are inconsistent with the medical evidence of record as a whole including opinions made by medical consultants employed by the state, demonstrating that the claimant has no more than moderate psychological limitations.

(Id. at 1468-69.)

Although the ALJ's decision acknowledged McGlynn's opinion the ALJ does not address what weight was afforded the opinion or any of the specific opined limitations.[4] With respect to the ALJ's vague and conclusory assertion that disability opinions are reserved for the Commissioner, that is not a basis to reject an opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) ("an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability"); Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work."); Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) ("Dr. Johnson's statement that Hill would be 'unlikely' to work full time was not a conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1), but instead an assessment, based on objective medical evidence, of Hill's likelihood of being able to sustain full time employment given the many medical and mental impairments Hill faces and her inability to afford treatment for those conditions.").

Moreover, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison, 759 F.3d at 1012-13; see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed

---

[4] Defendant argues that the ALJ afforded McGlynn's opinion, "great weight." (Def.'s MSJ (ECF No. 22) at 23.) Defendant, however, cites to the ALJ's prior February 18, 2015 opinion, not the February 2, 2018 opinion at issue here.

8

seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Accordingly, the court finds that the ALJ's treatment of Nurse Practitioner McGlynn's opinion, yet again, constituted error.[5]

**II.     Lay Witness Testimony**

Plaintiff also challenges the ALJ's treatment of plaintiff's subjective testimony and the lay witness testimony.[6] (Pl.'s MSJ (ECF No. 19) at 27-30.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else

////

---

[5] Plaintiff argues that because Nurse Practitioner McGlynn worked directly under the supervision of an acceptable medical source, Nurse Practitioner McGlynn should have been considered an acceptable medical source whose opinion could only be rejected for clear and convincing, or specific and legitimate, reasons. (Pl.'s MSJ (ECF No. 19) at 25.) The ALJ's treatment of McGlynn's opinion, however, failed to satisfy an applicable standard.

[6] The court would normally address plaintiff's testimony separately from lay witness testimony. However, the ALJ discussed the these items singularly and the court will do the same.

9

disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[7] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Moreover, the testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.

---

[7] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

"[T]he reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ first recounted the lengthy testimony offered by plaintiff and plaintiff's mother, stating:

> The claimant alleges disability due in part to neck and shoulder problems as well as to depression and attention deficit hyperactivity disorder. Regarding depression, he said he experiences emotional breakdowns, anger, and irritability, and is unable to get along with people. He reported that as a result of attention deficit hyperactivity disorder, he experiences a racing mind which medication has not helped. He has always had these problems but they have worsened over the years. He alleges he is not able to concentrate or remember well which interferes with his ability to do more than simple tasks and even then, he said he becomes easily sidetracked. He can make simple meals, and do some household chores such as vacuuming, laundry, and dishes, but gets sidetracked or bored and does not finish tasks. He has difficulty following both written and spoken instructions alleging he cannot retain such information. He tried twice to obtain his GED and failed. Mostly, the claimant indicates he has difficulty getting along with others. He is angry and irritable and fights with his mother, step-father, girlfriends, uncle, and friends in general. He has gotten into fights with bosses and coworkers.
>
> At the hearing held on September 17, 2012, the claimant alleged his neck and bilateral upper extremity symptoms including radiculopathy of the right upper extremity and pain down the right side of his neck worsened since the prior decision requiring multilevel surgery which did not provide sustained relief of his symptoms. He has neck spasms and numbness in his right fingers and hand. He has trouble fingering and holding onto things. He has more pain and numbness in the right dominant upper extremity. He takes Ibuprofen and Baclofen for his pain and spasms. He has difficulty sleeping due to neck pain and experiences fatigue, low energy, and decreased ability to focus.
>
> The claimant reported he is able to drive but daydreams while doing so and gets into accidents. He cannot pay bills but can count money; however, he said he tends to lose money. He sometimes goes shopping with his mother. He likes to play baseball and be outdoors. However, at the September 17, 2012, hearing, he said he has not played baseball since undergoing cervical spine surgery, although he attended his son's baseball games.

At the September 17, 2012, hearing, the claimant testified he stopped using alcohol in July 2012. He stopped because he was experiencing a lot of anger and getting into fights with people. He has not gotten into a fight since stopping his alcohol use. He used methamphetamine 15 years ago and he explained that a positive test for methamphetamine in 2010 was due to use of prescribed Ritalin. He has not smoked marijuana for two weeks.

The claimant's mother Patricia E. Garcia prepared several statements on behalf of her son. She also reported that he is easily sidetracked, has experienced many failed relationships, is unable to handle money, is violent, and he has memory difficulty. She said he struggles to perform simple tasks and requires reminders to attend appointments and must carry around a book of reminders. She confirmed he has difficulty understanding directions and cannot fill out or read paperwork. She does these tasks for him. He has mood swings and a neck problem, which causes numbness and pain in his arms and hands.

On May 9, 2011, Mrs. Garcia prepared another statement in which she said the claimant was threatening and uncontrollable. She related an incident at her home in which the claimant physically fought with his adult brother forcing her to obtain a restraining order against the claimant. In early May 2011, the claimant returned to her home and was kicking and throwing things around in the garage and screaming and yelling. She said the police had to Taser the claimant and he was transported to the hospital but released a few hours later. A few days later, the claimant threatened to kill his step-father. Mrs. Garcia said when the claimant is in a manic state he talks fast, has violent tendencies, and moves fast. The only time she has observed that the claimant is focused is when he or his son plays baseball.

During his most recent hearing, the claimant testified that he could not remember when his back pain had begun. He stated that the pain went down his legs. Although he initially testified that he could not lift anything, he revealed that he could lift a coffee cup. He also stated that he could wash dishes, but not for long due to pain when standing for long periods. He noted that he could sometimes lift a small trash can and place it in a larger trash can; that his girlfriend would do the cooking; that he could not drive because he felt uncomfortable due to his medications; that he had not driven in 7 years; and that he had lost his license prior to that due to not paying child support. The clamant further testified that he felt ok standing and walking for two to three hours but then he had to lay down. He stated that he would lay down twice a day and fall asleep for 3 to 4 hours; that he had problems sleeping at night and took medications to help sleep; that he had tried physical therapy recently, but it resulted in too much pain. The claimant acknowledged that he had never tried aqua therapy, although it had recently been recommended. He also testified that he thought he would miss work 3 days a week.

(Tr. at 1452-53) (citations omitted).

////

The ALJ then went on to discuss at considerable length the medical evidence and opinion evidence of record before returning to the lay witness testimony of plaintiff's "mother and girlfriend," stating:

> The undersigned has considered the statements of the claimant's mother and girlfriend in accordance with SSR 06-03p, including the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. The undersigned gives the claimant's mother and girlfriend less weight regarding their allegations that the claimant has disabling limitations of memory and concentration, an inability to perform even simple tasks, an inability to function in a normal workday, and an inability to get along with others such that he cannot work, as they are inconsistent with the medical evidence of record as a whole as discussed above including the opinions made by Dr. Goldberg and Dr. Franco demonstrating that the claimant had no more than moderate psychological limitations. Moreover, the claimant has demonstrated an ability to perform a significant number of activities of daily living, including playing in a baseball league and coaching his son in baseball, which shows that he is able to perform, at the least, simple tasks as well as get along with others. Thus, the third-party statements are not consistent with the preponderance of the evidence in this case.

(Id. at 1469.)

In this regard, the ALJ provided two reasons for rejecting the lay witness testimony: their alleged inconsistency with medical evidence and plaintiff's activities of daily living. However, "[a] lack of support from medical records is not a germane reason" for rejecting lay witness testimony. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017); see also Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record."). Nor does the ALJ explain with any specificity how the statements are "inconsistent with the medical evidence of record as a whole[.]" (Tr. at 1469.) Moreover, as discussed in detail below, the ALJ's reliance on plaintiff's activities of daily living was erroneous.

After a brief discussion of Global Assessment of Functioning scores, the ALJ returned to the testimony of plaintiff and the lay witnesses, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's, his mother's, and his girlfriend's statements concerning

13

> the intensity persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Despite their allegations, the claimant has demonstrated an ability to perform a significant number of activities of daily living, including playing baseball and coaching his son in baseball, which further demonstrates that he is able to interact with others in a team-like environment. In addition, the medical evidence of record as a whole including the opinions made by medical consultants employed by the state, demonstrates that the claimant is able to perform a reduced range of light work with no more than moderate psychological limitations. In sum, the above residual functional capacity assessment is supported by the medical evidence of record as a whole.

(Tr. at 1470.)

With respect to the ALJ's reliance on plaintiff's activities of daily living,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold for transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Vertigan, 260 F.3d at 1050).

Here, the ALJ made no effort to explain how plaintiff's alleged activities of daily living met the threshold for transferable work or contradicted plaintiff's testimony. With respect to the ALJ's vague and conclusory reference to the medical evidence of record as a whole, "after a

14

claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony and failed to provide a germane reason for rejecting the lay witness testimony. Plaintiff, therefore, is also entitled to summary judgment on this claim.

**III. Step-Five Error**

Plaintiff also challenges the ALJ's finding at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 19) at 31-32.) At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, the ALJ relied on testimony from a VE. (Tr. at 1471.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant. Bray, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of

the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, because of the ALJ's errors with respect to the opinion of Nurse Practitioner McGlynn, plaintiff's testimony, and the lay witness testimony, the ALJ's questioning of the VE did not account for all of plaintiff's limitations. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ committed an error at step five of the sequential evaluation.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"[8] Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at

---

[8] Having found multiple errors in the ALJ's decision that require remand for the payment of benefits, the court need not reach plaintiff's remaining claims of error. See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not address Plaintiff's remaining contentions.").

16

1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, it has been almost ten years since plaintiff first applied for benefits. The ALJ has issued erroneous decision, after erroneous decision, despite being given repeated opportunities to correct errors. Remanding for further proceedings yet again would seem to be both futile and unjust. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

More importantly, further administrative proceedings would serve no useful purpose as the record contains ample evidence, testimony, and medical opinion evidence. The ALJ failed to provide legally sufficient reasons for rejecting the opinion of Nurse Practitioner McGlynn, plaintiff's testimony, and the corresponding lay witness testimony. If the improperly discredited evidence were credited as true the ALJ would be required to find plaintiff disabled on remand, as evidenced by the VE's testimony. (Tr. at 1531-34.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." Wechel v. Berryhill, 713 Fed. Appx. 559, 562 (9th Cir. 2017). Furthermore, the record as whole does not create serious doubt as to whether plaintiff is disabled. See Moe v. Berryhill, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 22) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the payment of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

DATED: March 24, 2020 /s/ DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\vieira0955.ord

18